## SETTLEMENT AGREEMENT AND GENERAL RELEASE

WHEREAS, Tisha Shaw ("Plaintiff" or "Releasor") worked for A&C Private Home Care, LLC ("Defendant" or "A&C") from July 12, 2021 through October 31, 2021;

WHEREAS, Plaintiff filed an action (the "Action") captioned, *Tisha Shaw v. A&C Private Home Care, LLC*, Case No. 1:22-cv-00422-JPB, in the United States District Court for the Northern District of Georgia (the "Court"), asserting claims against A&C for alleged violations of the Fair Labor Standards Act ("FLSA");

WHEREAS, the parties desire to settle any and all disputes between them, without admitting liability or fault, including but not limited to all claims asserted in the Action;

NOW, THEREFORE, in consideration of the mutual covenants and agreements set forth below, the parties execute this Agreement, agreeing as follows:

I. **PARTIES:** This document sets forth the terms and conditions of the Settlement Agreement and General Release (hereinafter "Agreement") by and between Plaintiff and Defendant. The term "Releasees" used herein shall include A&C, and all of its parents, subsidiaries, affiliates, members, owners, shareholders, employees, agents, insurers, and attorneys, together with their predecessors, successors and assigns, both jointly and severally.

II. **PAYMENT AND CONSIDERATION:**

   A. In consideration of the release and other obligations entered into by Plaintiff pursuant to this Agreement, and obtaining from the Court an Order approving this Agreement and dismissing the Action with prejudice, A&C agrees that, after this Agreement has been fully-executed, it will pay Plaintiff the total amount of $7,993.00 within 10 business days following the Court's issuance of an Order approving this Agreement and dismissing the Action with prejudice, as follows:

   1. A check in the amount of $1,278.00, less normal payroll withholdings, for alleged back pay, payable to Tisha Shaw and reported on an IRS Form W-2;

   2. A check in the amount of $1,278.00 for alleged liquidated damages, payable to Tisha Shaw and reported on an IRS Form 1099; and

   3. A check in the amount of $5,437.00 for litigation expenses, costs and attorneys' fees, payable to Shellist Lazarz Slobin LLP and reported on an IRS Form 1099.

   B. Plaintiff understands and agrees that she and her counsel are responsible (and not Defendant) for any tax liability respecting the payments set forth in Section II.A of this Agreement and Plaintiff's portion of social security tax. Further, Plaintiff agrees to

    indemnify Defendant for all costs, including attorneys' fees, it incurs as a consequence of Plaintiff's failure to satisfy any tax obligations arising out of this Agreement. Notwithstanding the foregoing, A&C is responsible for the payroll tax withholdings on the payment identified in Section II.A.1 (above).

C. Upon full execution of this Agreement, the parties agree that Plaintiff will cause to be filed a Joint Motion to Approve Settlement Agreement and to Dismiss with Prejudice in a form acceptable to Defendant. Plaintiff agrees to the dismissal of the Action with prejudice, subject to the Court retaining jurisdiction to enforce the terms of this Agreement. Should the Court not approve the settlement, the parties agree that this Agreement shall be null and void, and Defendant shall have no obligation to make any payments pursuant to this Agreement.

D. Defendant's obligation to make the payments set forth in Section II.A is conditioned upon the receipt by Defendant's counsel, Fidlon Legal, PC, of (a) a completed IRS Form W-4 from Plaintiff and completed IRS Form W-9s from Plaintiff and her attorneys, Shellist Lazarz Slobin LLP, and (b) notification via the Court's CM/ECF system of an Order entered by the Court approving this Agreement and dismissing the Action with prejudice and without additional payment of costs or attorneys' fees. The payments set forth in Section II.A shall be sent to Shellist Lazarz Slobin LLP, 11 Greenway Plaza, Suite 1515, Houston, Texas 77046 (Attention: Melinda Arbuckle, Esq.).

## III. GENERAL RELEASE:

A. As a material inducement to Defendant to enter into this Agreement, subject only to the exceptions noted in Section III.C, below, Releasor hereby irrevocably and unconditionally releases, acquits, and forever discharges the Releasees, and all persons acting by, through, under or in concert with them, from any and all charges, complaints, claims, liabilities, obligations, promises, damages, causes of action, rights, demands, costs, lawsuits, debts and expenses, including but not limited to attorney fees and costs, actually incurred of any nature whatsoever, known or unknown, which Releasor now has, or claims to have, or which Releasor at any time heretofore had or claimed to have (collectively the "Released Claims"). Releasor further agrees to waive irrevocably any right to recover under any claim that may be filed with or by the Equal Employment Opportunity Commission or any other federal, state or local agency with respect to the work she performed for A&C.

B. Releasor understands that she is forever releasing and forgiving all known or unknown claims or causes of action which she brought or could have brought against Releasees in the Action or any other litigation, whether under federal, state, or local law. Releasor understands that the claims she is releasing might arise under many different laws (including statutes, regulations, other administrative guidance, and common law doctrines), such as the following:

    1. <u>Anti-discrimination statutes</u>, such as Title VII, which prohibits discrimination and harassment based on race, color, national origin, religion, sex, and pregnancy, and

prohibits retaliation; the Equal Pay Act, which prohibits paying men and women unequal pay for equal work; the Americans with Disabilities Act and Sections 503 and 504 of the Rehabilitation Act of 1973, which prohibit discrimination based on disability; Section 1981 of the Civil Rights Act of 1866, which prohibits discrimination on the basis of race, color or national origin and retaliation; the Age Discrimination in Employment Act of 1967, and Executive Order 11,141, which prohibit discrimination on the basis of age and retaliation, and any other federal, state, or local laws prohibiting employment discrimination.

2. <u>Federal employment statutes</u>, such as the Employee Retirement Income Security Act of 1974, which, among other things, protects employee benefits; the Fair Labor Standards Act of 1938, which regulates wage and hour matters; the Family and Medical Leave Act of 1993, which requires employers to provide leaves of absence under certain circumstances and prohibits retaliation; the WARN Act, which requires that advance notice be given of certain work force reductions; and any other federal laws relating to employment, such as veterans' reemployment rights laws.

3. <u>Other laws</u>, such as any federal, state, or local laws restricting an employer's right to terminate employees, or otherwise regulating the terms or conditions of employment; any federal, state, or local law enforcing express or implied employment contracts or requiring an employer to deal with employees fairly or in good faith; any other federal, state, or local laws providing recourse for alleged wrongful discharge, breach of contract, improper garnishment, assignment, or deduction from wages, health and/or safety violations, improper drug and/or alcohol testing, any tort, physical or personal injury, infliction of emotional distress, fraud, negligence, loss of consortium, negligent misrepresentation, negligent supervision, defamation, abusive litigation, and similar or related claims.

4. <u>Examples of Released Claims</u> include, but are not limited to the following (except to the extent explicitly preserved by Section III.C of this Agreement): (i) Releasor's claims or any related claims asserted in the Action; (ii) claims that in any way relate to or arise from any express or implied agreement or promise made to Releasor by any Releasee; (iii) claims that in any way relate to Releasor's employment with A&C or any predecessor entity, or the termination of that employment, such as claims for compensation, benefits, insurance premiums, bonuses, commissions, lost wages, travel expenses, or unused accrued vacation or sick pay; (iv) claims that in any way relate to allegations of alleged harassment, discrimination, and/or retaliation; (v) claims that in any way relate to any state law tort causes of action; and (vi) claims that relate to attorneys' fees, costs, expenses or other indemnities with respect to claims that Releasor is releasing.

C. Releasor is not releasing: (1) any claim that relates to her right to enforce this Agreement; (2) any rights or claims that arise after Releasor signs this Agreement; or (3) any claim that cannot be released by law.

### IV. KNOWING AND VOLUNTARY WAIVER AND RELEASE:

A. Releasor acknowledges that, before signing this Agreement, she was given twenty-one (21) days to consider it. Releasor has taken all of the twenty-one (21) day period she desired and if she signed in less than twenty-one (21) days, such was her knowing and voluntary intent.

B. Releasor acknowledges that she has had reasonable and sufficient time to consider whether or not she desires to enter into this Agreement. It is understood and agreed that this Agreement is executed by Releasor knowingly and voluntarily. The parties also acknowledge that no promise or inducement has been offered or made except as set forth in this Agreement.

C. As part of this consideration for the conditions of the settlement as set forth above, the signatories expressly warrant and represent that: (1) they are legally competent to execute this Agreement; and (2) there are no outstanding subrogation claims or liens of any type or character, by reason of the matters covered by the general release contained herein.

D. Releasor has the right and opportunity to consult fully with legal counsel or other advisor prior to signing this Agreement and she has, in fact, consulted with her legal counsel, Melinda Arbuckle, Esq. of Shellist Lazarz Slobin LLP, prior to signing this Agreement. Releasor also acknowledges that before signing this Agreement, she has read and fully understood each paragraph herein.

E. For a period of seven (7) days after the date of execution of this Agreement, Releasor has the right to revoke this Agreement. The Agreement shall not be effective or enforceable until eight (8) days after the date of execution, without revocation by Releasor (the "Effective Date"). The Agreement will not become effective or enforceable if it is revoked by Releasor during the seven-day period after execution. Releasor must submit notice of revocation of this Agreement in writing addressed to Gregory R. Fidlon, Fidlon Legal, PC, 3355 Lenox Road, Suite 750, Atlanta, GA 30326. The notice of revocation to be effective must be received during the seven-day revocation period.

V. **NO OTHER FILINGS:** Plaintiff represents that, except for the Action, she has not filed any complaints or charges against any of the Releasees with any federal, state or local court or agency that concern or relate to her employment with A&C or the termination thereof. Plaintiff agrees never to institute or aid in the institution or prosecution of any claim, action, complaint, charge or suit, absent subpoena, court order or other administrative or court procedure requiring Plaintiff's cooperation, whether at law or in equity, against the Releasees, in any court or administrative agency or before any other public or private tribunal, which in any way arises from or relates to the Released Claims.

VI. **NON-DISPARAGEMENT:** Plaintiff agrees not to make any oral or written statement or take any other action that disparages or criticizes the Releasees, A&C or their or its members, shareholders, owners, management, employees or practices, or that harms their or its good

reputation. Defendant agrees that A&C's members and the members of its management team, Angela Agwunobi, Cletus Agwunobi, Jenny Oliveira, Margaret Cumberbatch and Lashyana Broadnax, shall not make any oral or written statement or take any other action that disparages or criticizes Plaintiff.

VII. **REFERENCES:** Defendant agrees that if a request from a prospective employer for a reference on Plaintiff is directed to its Director of Operations, Cletus Agwunobi (at acprivatehomecare@yahoo.com or 770-776-6637), Mr. Agwunobi shall respond solely by confirming Plaintiff's dates of employment and position held.

VIII. **ATTORNEYS' FEES IN CONNECTION WITH BREACH:** In the event a court awards either party damages or equitable relief due to the other party's breach of this Agreement, the breaching party shall be liable to the non-breaching party for all reasonable attorneys' fees and costs incurred in connection with obtaining such damages or equitable relief.

IX. **NON-ADMISSION:** Releasor acknowledges that the payments set forth herein do not constitute any admission of liability on the part of the Releasees, by whom liability is expressly denied. This Agreement shall not be deemed an admission of liability or a violation of any law, rule, regulation or order, of any kind.

X. **MISCELLANEOUS:**

  A. *Governing Law & Jurisdiction.* This Agreement shall be governed by and construed in accordance with the laws of the State of Georgia. The parties agree that any disputes related to this Agreement shall be subject to the jurisdiction of the United States District Court for the Northern District of Georgia, Atlanta Division.

  B. *No Assignment.* Plaintiff represents and warrants that she has not sold, assigned, transferred, conveyed or otherwise disposed of to any third party, by operation of law or otherwise, any action, cause of action, suit, debt, obligation, account, contract, agreement, covenant, guarantee, controversy, judgment, damage, claim, counterclaim, liability or demand of any nature whatsoever relating to any matter covered by this Agreement.

  C. *Successors.* This Agreement shall be binding upon, enforceable by and inure to the benefit of Releasor's personal or legal representatives, executors, administrators, successors, heirs, distributees, devisees and legatees and the Releasees and any successor of the Releasees, but neither this Agreement nor any rights or payments arising hereunder may be assigned, pledged, transferred or hypothecated by Releasor.

  D. *Headings.* Headings used in this Agreement are for reference purposes only and shall not be deemed to be a part of this Agreement.

  E. *Entire Agreement.* This Agreement constitutes the entire agreement between the Releasor and the Releasees pertaining to those subjects contained in it and supersedes all prior and contemporaneous agreements, representations and understandings. It is expressly

understood and agreed that this Agreement may not be altered, amended, modified or otherwise changed in any respect or particular manner whatsoever except by a writing duly executed by all parties.

F. *Severability.* Each provision of this Agreement is intended to be severable. In the event a portion of this Agreement is held to be legally invalid by a competent court of law, the invalid portion shall be stricken, and all other obligations shall remain valid and mutually binding on the parties and not be affected thereby.

G. *Counterparts.* This Agreement may be executed in any number of counterparts, which counterparts considered together shall constitute a single, binding, valid, and enforceable Agreement. The exchange of copies of this Agreement and of signature pages by facsimile transmission or by electronic mail as a .pdf file shall constitute effective execution and delivery of this Agreement as to the parties and may be used in lieu of the original Agreement for all purposes. Signatures of the parties transmitted by facsimile or by electronic mail as a .pdf file shall be deemed to be their original signatures for all purposes.

I HAVE CAREFULLY READ AND UNDERSTAND THIS SETTLEMENT AGREEMENT AND GENERAL RELEASE, WHICH INCLUDES A RELEASE OF ALL KNOWN AND UNKNOWN CLAIMS.

_____  05/04/2022
Tisha Shaw                       Date

A&C PRIVATE HOME CARE, LLC

By: _____  5/13/2022
Angela Agwunobi                  Date
Managing Member